# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

November 18, 2021

BY ECF

The Hon. Eric Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201


Re: *United States v. Dennis Harris*, No. 21 Cr. 376 (EK)

Your Honor:

Defendant Dennis Harris respectfully moves pursuant to Fed. R. Crim. P. 12(b)(3)(C) to suppress the fruits of an unconstitutional car search, including a firearm, alleged marijuana and related paraphernalia, and statements to law enforcement. *See Wong Sun v. United States*, 371 U.S. 471 (1963). In the alternative, Mr. Harris requests a hearing on the issues set forth below.

## I. BACKGROUND

### A. The Car Search

We anticipate no dispute about the following facts:

On March 14, 2021, Dennis Harris was sitting in the driver's seat of his blue Kia on Fulton Street in Brooklyn. (*See* DX A (Declaration of Dennis Harris, Nov. 18, 2021), at ¶ 1; *and see* Compl. ¶ 2). The Kia was stopped in the middle of the roadway. (*See* DX A ¶ 2; *and see* Compl. ¶ 2). Police officers and emergency medical personnel appeared on the scene and invited Mr. Harris to get out of his car so he could receive medical attention. (*See* DX A ¶¶ 4 & 6; *and see* DX B (*People v. Dennis Harris*, Index No. K2160951, Kings County Criminal Court Complaint) at 1 ("the defendant got out of said vehicle to be treated by EMS")).

Mr. Harris agreed. He got out of the car, closed the car door, lit a cigarette, walked over to a waiting ambulance with his hands in his pockets and the cigarette in his mouth, and got in the ambulance voluntarily to receive medical attention. He was not handcuffed or physically detained at that point. Indeed, the only time any police officer put their hands on Mr. Harris was

to gently help him up into the back of the ambulance.  (*See* DX A ¶¶ 5-8; *and see* DX C (body-worn camera DH000050) at 22:14:10-52 & DX D (body-worn camera DH000047) at 22:14:21-15:16 (showing this sequence of events)).[1]

After Mr. Harris walked over to the ambulance, a police officer opened the driver's side car door of the Kia and began to search the passenger compartment.  He felt with his hand under the seat and then popped open the panel of the fuse box under the steering wheel.  (*See* DX C at 22:14:53-15:10; Compl. ¶ 3).  The government claims a firearm was discovered in the fuse box.  (Compl. ¶ 3).

The question presented is whether that warrantless search was constitutional.

**B.  The Dispute About Whether The Search Occurred After The Arrest**

The Complaint alleges that the car search occurred after Mr. Harris was arrested, implying that the government will seek to defend the search as incident to that arrest.  (*See* Compl. ¶¶ 2-3 ("Officers arrested the defendant for driving while intoxicated and unlawful possession of marijuana. *After the arrest*, the officers searched the defendant's vehicle and recovered a 9 mm Makarov Caliber semi-automatic pistol . . . from a fuse box compartment below the steering wheel." (emphasis added)).

The defense disputes this claim. Body camera footage and other evidence reflect that Mr. Harris was *not* under arrest when the search was executed, but in fact was arrested only after the gun was found in the fuse box.

As discussed above, the body camera footage reflects that Mr. Harris was not handcuffed or physically detained at any point between when he got out of his vehicle and when he got into the back of the ambulance.  No firearms were out. No officers were even within arms-reach of him.  He walked over to the ambulance voluntarily with a cigarette in his mouth and his hands in his pockets.  (*See* DX C at 22:14:10-52 & DX D at 22:14:21-15:16).

Nor is there any evidence supporting the notion that Mr. Harris was ordered out of the vehicle to be arrested.  Rather, as the arresting officer has himself admitted in a sworn statement, Mr. Harris "got out of [the] vehicle" himself "to be treated by EMS." (DX B at 1).

Moreover, the body camera shows when the arrest did in fact happen. After the car search uncovers a firearm, the searching officer activates his body camera (at the 1:00 minute mark, thus turning on the sound and automatically saving the previous minute's video footage) and yells to the officers at the ambulance "Yo! 92! 92!" with his wrists crossed to signal that Mr. Harris should be arrested.  (*See* DX C 22:15:12-19).  That prompts officers at the ambulance to activate their own body cameras, pile into the ambulance, and handcuff Mr. Harris, putting him under arrest for the first time.  (*See* DX D at 22:15:12-28 *and see id.* at 40-42 ("Book him up. 92.")).

---

[1] DX C and DX D will be produced to the Court on a DVD along with courtesy copies of this motion and the other exhibits.

The defense position is that the car search happened before, not after, the arrest.

### C. The Dispute About What Probable Cause, If Any, Existed For The Car Search

The Complaint also alleges that "[o]fficers arrested the defendant for driving while intoxicated and unlawful possession of marijuana." (Compl. ¶ 2). Putting aside the dispute about the timing of the arrest, the mention of DWI and marijuana suggests the government is taking the position that the police had independent probable cause at the time they searched the car to look for evidence of those offenses.

The defense disputes this too. As to the DWI offense, Mr. Harris states that there were no containers of alcohol in the car. (Ex A ¶ 2). The Complaint alleges no facts—and none are discernable from the discovery—suggesting that this is untrue, nor are there any other circumstances which would have led an officer to conclude that open containers or any other evidence of a DWI would be found in the car.

To the contrary, the only evidence of a DWI offense—namely, the purported "odor of alcohol coming from the defendant" (if in fact officers really could have smelled such an odor, through their masks, in the wind that is audible in the body camera footage), Mr. Harris's behavior and demeanor, and his blood alcohol level—all got out of the car with Mr. Harris's body. There was nothing further to look for in the car.

Nor was there any probable cause to search the car for a criminal marijuana offense. Mr. Harris was charged in the underlying state case with violating N.Y. Penal Law 221.05, unlawful possession of marihuana in the second degree. (Ex. B at 1). This law, which was repealed 16 days after Mr. Harris's arrest, made possession of personal-use marijuana a non-criminal "violation punishable only by a fine of not more than fifty dollars." N.Y. Penal Law 221.05 (enacted Aug. 28, 2019).

There was no reason to believe the car would contain anything more than that. The vape pen on the driver's side floor was apparently visible to officers outside the car, but the body camera footage of the car search does not show the officer ever obtaining or remarking on any other marijuana. Nor was any marijuana vouchered, at least that has been proffered in discovery. In any event, all that was recovered or that was allegedly in plain view was, based on the charges, consistent only with personal use, which is not a criminal offense.

### D. The Fruits Of The Car Search

In addition to the firearm, ammunition, and alleged marijuana and paraphernalia, Mr. Harris made several statements to the police following the illegal car search. This motion seeks the suppression of all those fruits.

## II.    ARGUMENT

Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971) (citation omitted). The government bears the burden to show that such an exception applies. *Id.* at 455.

It cannot carry that burden here. The warrantless search of Mr. Harris's car was therefore unreasonable, violated the Fourth Amendment, and requires suppression of the firearm, statements, and other fruits of the search.

## A.  The Search Incident To Arrest Exception Does Not Apply

As discussed above, the Complaint principally indicates that the government is relying upon the search incident to arrest doctrine, claiming that the car search occurred "[a]fter the arrest." (Compl. ¶ 3). But that is not so.

1.      "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009). But there is another condition, too: the search must actually be "incident" to an arrest. "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification." *Sibron v. New York*, 392 U.S. 40, 63 (1968). When, as here, the search does precede the arrest, it "cannot be justified as incident to arrest." *Id.*

Contrary to the claim of the Complaint, Mr. Harris was not under arrest while the car search was executed. Body camera footage reveals that the officers call for him to be handcuffed and arrested for the gun ("Book him up. 92.") *after* the gun is found. Before that, as discussed above, Mr. Harris was not detained. He got out of the car for medical attention, not pursuant to an arrest; he was free to light a cigarette; he walked over to the ambulance with his hands in his pockets; and no officers touched him or were even near him until they helped him climb voluntarily into the back of the ambulance.

None of this remotely approaches even a *de facto* arrest. There was no "restraint," no "amount of force used by police," no evidence of Mr. Harris "being armed," no "handcuffs," and thus none of the usual factors that courts look to in determining whether a suspect is subject to a *de facto* arrest. *See, e.g.*, *United States v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993) (collecting cases).

2.      Moreover, even if the search incident to arrest exception were somehow relevant in this circumstance—and it is not—the scope of such a search could not reasonably extend to the fuse box in the car, because Mr. Harris was at least two car-lengths away from the car inside an ambulance when the search occurred. From that distance, he could not access any weapons in the car that might threaten officer safety, nor could he seek to destroy any potential evidence.

"[A] search incident to arrest may only include 'the arrestee's person and the area 'within his immediate control,'" meaning "the area from within which he might gain possession of a weapon or destructible evidence.'" *Gant*, 556 U.S. at 339 (quoting *Chimel v. California*, 395

U.S. 752, 763 (1969)).  "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception," *i.e.*, officer safety and the possibility of destruction of evidence, "are absent and the rule does not apply."  *Id.*

### B. There Was No Independent Reason To Believe The Car Would Contain Evidence Of A Crime

The government cannot justify the car search based upon the so-called "automobile" exception.  *California v. Acevedo*, 500 U.S. 565 (1991).  At the time of the search, there were no facts that would lead a reasonable officer to conclude the car would contain evidence of a crime. (For the same reason, the government cannot rely upon the second prong of *Gant*, even if that exception applied, which it does not).

1.        There was no probable cause to search the car for evidence of a DWI offense. As discussed above, all the evidence of that offense left the car inside Mr. Harris's body when he got out to seek medical attention: the purported odor of alcohol, his blood alcohol content, and his behavior, appearance, and demeanor. There were no containers of alcohol or other signs that Mr. Harris had been drinking in the vehicle.

This issue was addressed in *United States v. Taylor*, 49 A.3d 818 (D.C. App. 2012). In *Taylor*, the defendant was arrested for a DWI offense. A car search following that arrest uncovered a loaded gun in a locked glovebox. The trial court suppressed on the ground that "the police did not have reason to believe that evidence of the offense of arrest would be discovered in the vehicle," and the court of appeals affirmed. *Id.* at 819-20. Specifically, the court of appeals rejected the government argument that the searching officer's experience that typical DWI defendants have containers of alcohol in their vehicle, the defendant's obvious false statements about the timing of his drinking, and his "opportunity" to hide any potential containers in the vehicle justified the conclusion that containers might be found in the car. *Id.* at 827.

The court of appeals acknowledged that "[i]t was, of course, *possible* that evidence of drinking—such as empty or partially full containers of alcohol—would be found in the vehicle, just as it is possible that such evidence may be found in any vehicle driven by an intoxicated individual." *Id.* at 826.  But mere possibility was not enough.

Similarly here, while it was possible that evidence of Mr. Harris's drinking might have been found in his car, there was no probable cause (or, as in *Taylor*, even a reason to believe) that such evidence would be found there. There were no visible open containers, for example, or even closed containers that might contain alcohol.  The DWI evidence did not justify the car search.

2.        There was also no probable cause to search the car for "unlawful possession of marijuana," the other crime for which Mr. Harris was purportedly arrested. This is so for a different reason. Namely, that there was no "probable cause to believe [the] vehicle contain[ed] evidence of *criminal activity*."  *United States v. Ross*, 456 U.S. 798, 820-21 (1982) (emphasis added). Rather, the officers had observed evidence of, at most, a non-criminal violation.

Other jurisdictions dealing with de-criminalized marijuana have ruled that warrantless searches cannot be based solely on non-criminal amounts of marijuana alone. *See, e.g.*, *Commonwealth v. Cruz*, 945 N.E.2d 899, 909-10 (Mass. 2011); *United States v. Martinez*, 811 Fed. App'x 396, 397 (9th Cir. 2020) (unpublished); *United States v. Maffei*, 417 F. Supp. 3d 1212, 1226 (N.D. Cal. 2019) *aff'd* 827 Fed. App'x 760 (9th Cir. 2020) (unpublished).

And for good reason. Searches of a car based on civil infractions only would "serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis." *Gant*, 556 U.S. at 347. As with a search that is permitted "whenever an individual is caught committing a traffic offense," a search permitted due to a de-criminalized marijuana offense "creates a serious and recurring threat to the privacy of countless individuals." *Id.* at 344-45.

This issue is also pending before this Court in *United States v. Kyle Balkissoon*, No. 21 Cr. 186 (EK).

## III.    CONCLUSION

For the reasons set forth above, the search of Mr. Harris's car violated the Fourth Amendment.  The fruits of that search, including the firearm, marijuana, and statements, should be suppressed.  In the alternative, the Court should hold a suppression hearing.

Respectfully submitted,

/s James Darrow

James Darrow
Assistant Federal Defender
Tel. (718) 407-7419
james_darrow@fd.org

*Attorneys for Dennis Harris*

cc:     Counsel of record (by ECF)
        Chambers of the Hon. Eric Komitee (by email and hand delivery, with enclosures)